IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| *Plaintiff*, | |
| v. | Civil No.: 1:24-cv-03234-JRR |
| **JORGE ANTONIO GRACIANO LARA,** | |
| *Defendant.* | |

**MEMORANDUM OPINION**

Plaintiff the United States of America (the "Government") initiated this action to revoke the naturalization of Defendant Jorge Antonio Graciano Lara. (ECF No. 1.)  Pending now before the court is the Government's Motion for Judgment on the Pleadings (ECF No. 4; the "Motion"). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, the Motion will be granted.

I.   **UNDISPUTED FACTS**[1]

Defendant Jorge Antonio Graciano Lara, a native of El Salvador, entered the United States on or about December 13, 1991. (Ex. A, Gerald Edwards Aff. of Good Cause, ECF No. 1-1 ¶ III; "Edwards Aff.")[2]  On January 30, 1997, Graciano Lara became a lawful United States permanent resident. *Id.*   On February 12, 2015, Graciano Lara filed a Form N-400 application for naturalization pursuant to section 316(b) of the Immigration and Nationality Act ("INA").[3] *Id.*

---

[1] As explained at greater length below, the court considers the undisputed facts in ruling on the present Motion. The Government asks the court to deem its factual allegations accepted as true by Graciano Lara, because he has not denied them pursuant to Federal Rule of Civil Procedure 8(b)(6). *See* FED. R. CIV. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").  In view of the Supreme Court precedent discussed below requiring the Government to offer evidence to satisfy its burden here, *see Klapprott v. United States*, 335 U.S. 601 (1949), the court instead relies on the undisputed facts as demonstrated by the proffered evidence.

[2] Gerard Edwards is a Detention and Deportation Officer for the Department of Homeland Security's Enforcement and Removal Operations. (Edwards Aff., ECF No. 1-1 ¶ I.)

[3] Graciano Lara appears to have signed the Form N-400 on February 2, 2015. (N-400, ECF No. 1-7 at p. 18.)

*See also* Ex. G, Form N-400, ECF No. 1-7.  As part of the N-400, an "additional information" section includes a series of yes or no questions for the applicant to answer.  (N-400, ECF No. 1-7 at p. 13–18.)[4]  Of import here, Question 22 asks: "Have you **ever** committed, assisted in committing, or attempted to commit, a crime or offense for which you were not arrested?"  *Id.* at p. 15 (emphasis in original).  Graciano Lara checked "no" in answer to this question.  *Id.*  In completing the Form N-400, Graciano Lara certified "under penalty of perjury, under the laws of the United States of America, that this application, and the evidence submitted with it, are all true and correct."  *Id.* at p. 18.

In furtherance of his naturalization process, Graciano Lara appeared before a U.S. Citizenship and Immigration Services[5] ("USCIS") adjudications officer on July 14, 2015, for a naturalization interview to determine his eligibility.  (Edwards Aff., ECF No. 1-1 ¶ IV.)  He confirmed, under oath, that he had never committed a crime or offense for which he had not been arrested, that he had never given false, fraudulent, or misleading information to a Government official, and that he had never lied to gain an immigration benefit.  *Id.*  On the basis of his Form N-400 (and accompanying documents) and his naturalization interview testimony, Graciano Lara's "application for naturalization was approved and he was permitted to take the oath of allegiance and was admitted as a citizen of the United States on July 14, 2015."  *Id.* ¶ V.

At the time he completed his Form N-400, Graciano Lara resided with his spouse and stepdaughter (born in 2000).  (N-400, ECF No. 1-7 at pp. 3, 8, 12.)  He married his (then) spouse on August 16, 2011.  *Id.* at p. 8.  Relevant here, the family resided at a home on Blackpool Road in Montgomery County, Maryland, from approximately October 2010 to June 2014.  (N-400, ECF No. 1-7 at p. 4; Ex. D, Plea Hr'g Tr., ECF No. 1-4 at 15:19–24.)

---

[4] Unless otherwise stated, the referenced page numbers refer to the document's internal pagination.
[5] USCIS is an agency of the U.S Department of Homeland Security ("DHS").

2

On June 1, 2017, the State of Maryland indicted Graciano Lara on one count of sexual abuse of a minor, four counts of rape in the second degree, and twelve counts of sexual offense in the third degree. (Ex. B, Indictment, ECF No. 1-2.) The Indictment charged that between on or about January 1, 2012, through December 31, 2016, Graciano Lara had sexually abused and raped his stepdaughter who was under the age of 14 at the time. *Id.* Graciano Lara and the State entered into a plea agreement and set a date for a plea hearing. (Ex. C, Plea Memorandum, ECF No. 1-3.) In the Plea Memorandum, the parties agreed that Graciano Lara would enter a plea of guilty to Count II of the Indictment, which charged him with a violation of MD. CODE ANN., CRIM. LAW § 3-304(a)(3). Under Criminal Law § 3-304, a person is guilty of rape in the second degree where he engages in "vaginal intercourse[6] . . . with another . . . if the victim is under the age of 14 years, and the person performing the act is at least 4 years older than the victim." MD. CODE ANN., CRIM. LAW § 3-304(a)(3). The parties agreed that the elements of the offense to which Graciano Lara would plead guilty were: "that the defendant had vaginal intercourse with the [minor stepchild];" "that [the minor stepchild] was under fourteen years of age at the time of the act;" and that Graciano Lara "was then at least four years older than [the minor stepchild]." (Ex. C, Plea Memorandum, ECF No. 1-3 at p. 3.)

On September 20, 2017, Graciano Lara appeared before the Circuit Court for Montgomery County, Maryland, and pled guilty to Count II. (Plea Hr'g Tr., ECF No. 1-4 at 18:4–7.) At his plea hearing, the State set out the facts that it would have proved had the case proceeded to trial:

> [T]he victim disclosed that when they used to reside at 4104 Blackpool Road, Rockville, Maryland, in [2012],[7] the defendant and the victim were alone, and that the defendant had kissed her on the mouth one time.

---

[6] The statute was amended in 2017 (after Graciano Lara's conviction) to include "vaginal intercourse or a sex act." 2017 Maryland Laws Ch. 162.

[7] The attorney for the State originally misspoke and later clarified with Graciano Lara that the correct year was 2012. (Plea Hr'g Tr., ECF No. 1-4 at 17:5–13.)

> As the time went on -- at that time, she was about 12 years old. As time went on, the defendant started to increase his interaction with her, started to send her compromising texts regarding her appearance. The defendant would tell the victim that he liked her, and at one point, after the victim had stepped out of the shower, the victim was in -- the defendant was in the victim's room. He hugged her, and put her onto the bed, and started to take off her clothes.
>
> He then began to take off his clothes, exposing his penis and slowly to -- and began sexual intercourse with her, his stepdaughter. When he had finished, he had told the victim not to tell anyone. This was the first incident.
>
> Throughout the course of 2012 to 2016, the victim disclosed that she would have sexual intercourse with the defendant several more times. Ultimately, she didn't disclose any of this to her mother because the victim disclosed that the defendant told her that her family would be separated, he would go to jail, and they would ultimately be going back to El Salvador, from which they're from.
>
> . . . And then she also disclosed that the sexual intercourse between her and the defendant would occur when her mother would go to work, and she would work at Giant. At home, it would just be the victim and the defendant. The last time that sexual intercourse occurred between the two of them was November of 2016.

(Plea Hr'g Tr., ECF No. 1-4 at 15:21–16:24.) When asked by the court if that was "in fact, what occurred," Graciano Lara confirmed: "Yeah." *Id.* at 17:1–3. Graciano Lara was sentenced to 20 years' incarceration with all but 10 years suspended, followed by five years of supervised probation. (Ex. F, Commitment Record, ECF No. 1-6.)

The Government initiated this action on November 7, 2024, asserting three counts:

> <u>Count I</u>: Illegal Procurement of Naturalization—Lack of Good Moral Character: Unlawful Acts Adversely Reflecting on Moral Character;
>
> <u>Count II</u>: Illegal Procurement of Naturalization—Lack of Good Moral Character: False Testimony; and
>
> <u>Count III</u>: Procurement of U.S. Citizenship by Concealment of a Material Fact or Willful Misrepresentation.

4

(ECF No. 1 ¶¶ 59–96.) The summons and Complaint (with attached exhibits) were personally served on Graciano Lara at the Maryland Correctional Training Center ("MCTC) in Hagerstown, Maryland, on December 2, 2024. (ECF No. 3.) Graciano Lara failed to respond timely to the Complaint. The Government then filed the instant Motion, which it served on Graciano Lara via U.S. mail at MCTC. (ECF No. 4 at p. 4; ECF No. 4-1 at p. 25.) Graciano Lara did not respond to the Motion.

## II.     LEGAL STANDARD

A party may move for judgment on the pleadings after the pleadings are closed, so long as the motion is made early enough not to delay trial. FED. R. CIV. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standard applicable to motions to dismiss under Rule 12(b)(6)." *Green v. Sw. Credit Sys., L.P.*, 220 F. Supp. 3d 623, 624 (D. Md. 2016) (citing *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009)). A Rule 12(c) motion, like a Rule 12(b)(6) motion, does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Accordingly, in considering a Rule 12(c) motion, the court also "assume[s] all well-pled facts to be true and draw[s] all reasonable inferences in favor of" the non-moving party. *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 702 (4th Cir. 2016). "A motion for judgment on the pleadings pursuant to Rule 12(c), . . . should not be granted unless it appears to a certainty that the non-moving party cannot prove any set of facts in support of its claim that would entitle it to relief." *United States v. Castillo*, No. 8:19-CV-3459-PWG, 2021 WL 825974, at *3 (D. Md. Mar. 4, 2021) (citing *Shooting Point, L.L.C. v. Cumming*, 238 F. Supp. 2d 729, 735 (E.D. Va. 2002), *aff'd*, 368 F.3d 379 (4th Cir. 2004)).

Relevant here, when considering "the power of federal district courts to enter default judgments depriving naturalized persons of their citizenship without hearings or evidence," the Supreme Court has held, "it seems peculiarly appropriate that a person's citizenship should be revoked only after evidence has established that the person has been guilty of prohibited conduct justifying revocation." *Klapprott v. United States*, 335 U.S. 601, 602, 611, 613 (1949) (holding "courts should not . . . deprive a person of his citizenship until the Government first offers proof of its charges sufficient to satisfy the burden imposed on it, even in cases where the defendant has made default in appearance"); *see United States v. Mohammad*, 249 F. Supp. 3d 450, 457 (D.D.C. 2017) (explaining "the government cannot obtain judgment in a civil denaturalization action by default"). In view of such precedent, the Government here has opted to move for judgment on the pleadings pursuant to Rule 12(c), notwithstanding that such motions are most often filed by defendants in a case. When considering motions in this posture, this court has previously applied a standard akin to motions for summary judgment—and thus, the court "may grant judgment on the pleadings only where the parties do not disagree about any material facts and the case can be decided as a matter of law." *United States v. Paz*, No. CV DLB-23-2801, 2024 WL 5186711, at *3 (D. Md. Dec. 20, 2024) (quoting *Bell Atl.-Md. v. Prince George's County*, 155 F. Supp. 2d 465, 472 (D. Md. 2001)).

"The key distinction between a Rule 12(c) motion and a Rule 56 motion is that the court may not consider facts outside the pleadings under Rule 12(c)." *Davis v. Reliance Test & Tech., LLC*, No. CV DKC 22-1760, 2024 WL 83347, at *2 (D. Md. Jan. 8, 2024) (citation omitted). In ruling on the Government's Motion, the court will therefore consider the pleadings, including the Government's exhibits attached to its Complaint. *See Goines v. Valley Comm. Svcs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (explaining that the court considers documents "attached to the

complaint as exhibits"); FED. R. CIV. P. 10(c) (pertaining to "written instruments" attached as exhibits to a pleading). As Graciano Lara has not appeared in this action, the exhibits, and the contents thereof, are all undisputed.

### III.    ANALYSIS

"[T]he right to acquire American citizenship is a precious one and that once citizenship has been acquired, its loss can have severe and unsettling consequences." *Fedorenko v. United States*, 449 U.S. 490, 505 (1981). Importantly, "there must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship." *Id.* "Failure to comply with any of these conditions renders the certificate of citizenship 'illegally procured,' and naturalization that is unlawfully procured can be set aside." *Id.* at 506.

Section 1451(a) of INA provides:

> It shall be the duty of the United States attorneys . . . , upon affidavit showing good cause therefor, to institute proceedings . . . for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground that such order and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation . . . .

8 U.S.C. § 1451(a).[8] There are thus two bases upon which the Government institutes proceedings to revoke citizenship: (1) where it was illegally procured, and (2) where it was procured by concealment of a material fact or by willful misrepresentation. *Id.*

"[I]n view of the grave consequences to the citizen, naturalization decrees are not lightly to be set aside." *Chaunt v. United States*, 364 U.S. 350, 353 (1960). "The Government carries a heavy burden of proof in a proceeding to divest a naturalized citizen of his citizenship." *Costello*

---

[8] Where the Government has met its burden, "such revocation and setting aside of the order admitting such person to citizenship and such canceling of certificate of naturalization shall be effective as of the original date of the order and certificate, respectively." 8 U.S.C. § 1451(a).

*v. United States*, 365 U.S. 265, 269 (1961).  In particular, "[t]he evidence justifying revocation of citizenship must be 'clear, unequivocal, and convincing' and not leave 'the issue in doubt.'" *Fedorenko*, 449 U.S. at 505 (quoting *Schneiderman v. United States*, 320 U.S. 118, 125 (1943)). "Any less exacting standard would be inconsistent with the importance of the right that is at stake in a denaturalization proceeding." *Id.* at 505–506.  Where the Government has met its burden in proving same, the court lacks "equitable discretion to refrain from entering a judgment of denaturalization against a naturalized citizen whose citizenship was procured illegally or by willful misrepresentation of material facts." *Id.* at 517.

The Government contends it has satisfied its burden as to all counts and that it is therefore entitled to judgment.

**A. Counts I and II: Illegal Procurement of Naturalization**

Counts I and II of the Complaint charge that Graciano Lara illegally procured his naturalization.  (ECF No. 1 ¶¶ 59–84.)  "Citizenship is illegally procured if some statutory requirement that is a condition precedent to naturalization is not met during the naturalization process." *United States v. Okeke*, 671 F. Supp. 2d 744, 748 (D. Md. 2009) (citing *Kungys v. United States*, 485 U.S. 759 (1988)).  Relevant here, "[n]o person . . . shall be naturalized unless such applicant . . . during all the periods referred to in this subsection has been and still is a person of good moral character." 8 U.S.C. § 1427(a).  In particular, "[a] petitioner must show 'good moral character' for the five years immediately preceding the filing of his or her application, and from the date the application is filed up to the date he or she is admitted for citizenship." *Etape v. Napolitano*, 664 F. Supp. 2d 498, 506–507 (D. Md. 2009).

The INA does not specifically define "good moral character;" rather, it is evaluated "on a case-by-case basis," considering the INA's accompanying regulations and "the standards of the

average citizen in the community of residence." 8 C.F.R. § 316.10(a)(2). The INA and its regulations identify specific bars to establishing a good moral character, such as "giv[ing] false testimony for the purpose of obtaining any [immigration] benefits," *see, e.g.*, 8 U.S.C. § 1101(f)(6), and a "catch-all" provision. *United States v. Paz*, No. CV DLB-23-2801, 2024 WL 5186711, at *4 (D. Md. Dec. 20, 2024). Specifically, "[t]he fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." 8 U.S.C. § 1101(f). An applicant lacks good moral character if, during the relevant period, he has "[c]ommitted unlawful acts that adversely reflect upon the applicant's moral character." 8 C.F.R. § 316.10(b)(3)(iii). "The phrase 'unlawful acts' is not defined, but has been interpreted to mean 'bad acts that would rise to the level of criminality, regardless of whether a criminal prosecution was actually initiated." *Paz*, 2024 WL 5186711, at *4 (quoting *Etape*, 664 F. Supp. 2d at 507).

The Government contends Plaintiff lacks (and lacked) good moral character, because he raped his stepdaughter (Count I) and because he gave false oral testimony under oath for the purpose of obtaining an immigration benefit (Count II); therefore, the Government urges, he illegally procured naturalization. (ECF No. 1 ¶¶ 59–84.)

   1. ***Count I: Illegal Procurement based on Unlawful Acts Adversely Reflecting on Moral Character***

The Government first contends that the record before the court demonstrates that Graciano Lara illegally procured his citizenship when he was barred from citizenship based on lack of good moral character, specifically on the basis of the rape of his stepdaughter. (ECF No. 1 ¶¶ 59–70; ECF No. 4-1 at p. 10–16.) As discussed above, the undisputed record before the court provides as follows: Graciano Lara committed a criminal act, rape in the second degree, in violation of MD. CODE ANN., CRIM. LAW § 3-304 – based on the age of the victim (under 14), her age when the

9

sexual abuse began (around 12), and the location of the first rape (Blackpool Road, where the family lived between 2010 and 2014); these acts occurred during the relevant statutory period in which Graciano Lara was required to be a person of good moral character; and Graciano Lara was aware that his conduct was a crime that carried with it consequences, as he told the victim not to disclose the abuse or that "her family would be separated, he would go to jail, and they would ultimately be going back to El Salvador." (Plea Hr'g Tr., ECF No. 1-4 at 15:21–16:24.)

Moreover, the crime at issue plainly adversely reflects on his moral character. "The sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002); *see United States v. Okeke*, 671 F. Supp. 2d 744, 749 (D. Md. 2009) (same). Indeed, other courts considering this question have found that sexual abuse of a minor during the relevant time period establishes a lack of good moral character. *See, e.g.*, *United States v. Martinez*, No. 23-CV-247-GKF-JFJ, 2024 WL 5347840, at *3 (N.D. Okla. Nov. 18, 2024) (noting that "[t]he sexual abuse of a minor is undoubtedly a crime of moral turpitude" and thus establishes "a lack of good moral character"); *United States v. Valencia*, No. 222CV00238RJSDBP, 2022 WL 17851984, at *5 (D. Utah Dec. 22, 2022) (concluding that the defendants "egregious behavior," including the "attempted rape and forcible sodomy of his daughter, "adversely reflect upon his moral character"); *United States v. Gayle*, 996 F. Supp. 2d 42, 53 (D. Conn. 2014) (recognizing that "sexual assault on a minor has been unanimously held to shock the conscious due to its inherent vileness and depravity"). *Cf. United States v. Castillo*, No. 8:19-CV-3459-PWG, 2021 WL 825974, at *7 (D. Md. Mar. 4, 2021) (discussing the materiality of sexual abuse in the context of a claim of procurement by material misrepresentation); *United States v. Okeke*, 671 F. Supp. 2d 744, 750 (D. Md. 2009) (concluding, for purposes of 8 U.S.C. § 1182(a)(2)(A)(i)(I), "sexual abuse of a minor is a base and depraved

crime that violates society's mores and values"). The court is similarly persuaded here; there is no doubt that Graciano Lara's rape of his minor stepdaughter adversely reflects upon his moral character during the relevant period.

Having concluded that the undisputed facts before this court demonstrate that Graciano Lara committed an unlawful act during the statutory period that adversely reflects on his moral character, the sole remaining question is whether he has "establishe[d] extenuating circumstances." 8 C.F.R. § 316.10(b)(3)(iii). "To establish extenuating circumstances, the alien must show that the circumstances are relevant to the showing of good character and not to the consequences of denaturalization." *United States v. Okeke*, 671 F. Supp. 2d 744, 750–51 (D. Md. 2009) (citing *United States v. Jean–Baptiste,* 395 F.3d 1190, 1195 (11th Cir. 2005)). Graciano Lara has plainly failed to meet such burden, as he has not responded to this action or the Motion. Further still, between Graciano Lara's lack of response and the fulsome record presented, the court is satisfied that no extenuating circumstance would "palliate or lessen" his guilt in raping his minor stepdaughter (for the purposes of showing a good moral character under the requisite statute and regulations). *See, e.g.*, *United States v. Teng Jiao Zhou*, 815 F.3d 639, 644 (9th Cir. 2016); *United States v. Suarez*, 664 F.3d 655, 662 (7th Cir. 2011).

Accordingly, the Government has met its burden to establish that Graciano Lara improperly procured his naturalization as, during the relevant statutory timeframe, he lacked the requisite good moral character due to his rape of his minor stepdaughter. The court will thus grant the Motion as to Count I.

### 2. *Count II: Illegal Procurement based on Unlawful Acts Adversely Reflecting on Moral Character*

The Government further contends that the record before the court demonstrates that Graciano Lara illegally procured his citizenship when he was barred from same based on lack of

good moral character, specifically because he gave false oral testimony under oath to obtain an immigration benefit. (ECF No. 1 ¶¶ 71–84; ECF No. 4-1 at pp. 16–20.)

As discussed above, 8 U.S.C. § 1101(f)(6) provides: "No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established is, or was . . . one who has given false testimony for the purpose of obtaining any benefits under this chapter." On this provision, the Supreme Court has remarked:

> On its face, § 1101(f)(6) does not distinguish between material and immaterial misrepresentations. Literally read, it denominates a person to be of bad moral character on account of having given false testimony if he has told even the most immaterial of lies with the subjective intent of obtaining immigration or naturalization benefits. We think it means precisely what it says.
>
> The absence of a materiality requirement in § 1101(f)(6) can be explained by the fact that its primary purpose is not (like § 1451(a)) to prevent false pertinent data from being introduced into the naturalization process (and to correct the result of the proceedings where that has occurred), but to identify lack of good moral character. The latter appears to some degree whenever there is a subjective intent to deceive, no matter how immaterial the deception.

*Kungys v. United States*, 485 U.S. 759, 779–80 (1988). In this context, testimony "is limited to oral statements made under oath." *Id.* at 780. Further, "§ 1101(f)(6) applies to only those misrepresentations made with the subjective intent of obtaining immigration benefits." *Id.*

Here, the undisputed record before the court is that Graciano Lara appeared before the USCIS adjudications officer on July 14, 2015, and, at the start of the interview, "took an oath or affirmed that he would answer all questions truthfully." (Edwards Aff., ECF No. 1-1 ¶¶ IV, VIII.)

When asked if he had ever committed a crime or offenses for which he had not been arrested, Graciano Lara answered, under oath, that he had not.[9]  *Id.*

As discussed above, the answer was false, because during the relevant period Graciano Lara had raped his minor stepdaughter.  He made gave this false testimony at his interview for naturalization.  The court is further persuaded that the undisputed evidence is that he made this false representation with the subjective intent of obtaining immigration benefits—he knew that his actions would bear on his immigration status (Plea Hr'g Tr., ECF No. 1-4 at 16:12–18), and he gave a false answer in the course of his naturalization interview.  *See, e.g.*, *Bijan v. United States Citizenship & Immigr. Servs.*, 900 F.3d 942, 946 (7th Cir. 2018) (explaining that applicant who knowingly lied under oath at naturalization interview "intended to obtain an immigration benefit—naturalization—by denying that he had made it"); *Yemer v. United States Citizenship & Immigr. Servs.*, 359 F. Supp. 3d 423, 430–32 (E.D. Va. 2019) ("There can be no doubt that one who falsely denies during a naturalization interview that she has previously given false or misleading information to a government official does so for the purpose of obtaining naturalization benefits."); *United States v. Zhong*, No. C 11-5112 MEJ, 2013 WL 4647418, at *16 (N.D. Cal. Aug. 29, 2013), *aff'd,* 628 F. App'x 498 (9th Cir. 2015) (discussing subjective intent requirement and concluding that defendant who testified under oath at naturalization interview did not possess requisite good moral character).

In view of the foregoing, the Government has met its burden to establish that Graciano Lara improperly procured his naturalization, as he lacked the requisite good moral character where

---

[9] Plaintiff's Form N-400 similarly contains red checkmarks and notations made by the USCIS adjudications officer. A red check appears next to Question 22.  (N-400, ECF No. 1-7 at p. 15.)  *See United States v. Mohammad*, 249 F. Supp. 3d 450, 454 n.3 (D.D.C. 2017) (discussing "regular agency practice of taking notes in red ink" in verifying an applicant's answers on Form N-400 application) (citations omitted); *see also United States v. Sadig*, 271 F. App'x 290, 293 (4th Cir. 2007) (discussing adjudicator's use of red check marks on Form N-400 in the context of 18 U.S.C. § 1425(a)).

he gave false testimony for the purpose of obtaining an immigration benefit in violation of 8 U.S.C. § 1101(f)(6). The court will grant the Motion as to Count II.

### B. Count III: Procurement of U.S. Citizenship by Concealment of Material Fact or Willful Misrepresentation

As discussed above, 8 U.S.C. § 1451(a) also "provides for the denaturalization of citizens whose citizenship orders and certificates of naturalization 'were procured by concealment of a material fact or by willful misrepresentation.'" *Kungys v. United States*, 485 U.S. 759, 767 (1988) (quoting 8 U.S.C. § 1451(a)). This provision "contains four independent requirements: the naturalized citizen must have misrepresented or concealed some fact, the misrepresentation or concealment must have been willful, the fact must have been material, and the naturalized citizen must have procured citizenship as a result of the misrepresentation or concealment." *Id.*; *see United States v. Paz*, No. CV DLB-23-2801, 2024 WL 5186711, at *8 (D. Md. Dec. 20, 2024) (same); *United States v. Okeke*, 671 F. Supp. 2d 744, 752 (D. Md. 2009) (same). The Government contends that all four requirements are satisfied here. (ECF No. 4-1 at pp. 21–23.)

The first requirement—that the naturalized citizen must have misrepresented or concealed some fact—is met. The undisputed record conclusively supports this conclusion. In his Form N-400 of February 2015, Graciano Lara checked a box to indicate he had not "ever committed, assisted in committing, or attempted to commit, a crime or offense for which [he] was not arrested." (N-400, ECF No. 1-7 at p. 15.) He appeared before a USCIS adjudications officer for an interview in July of that same year and stated under oath that he had never committed a crime or offense for which he was not arrested. (Edwards Aff., ECF No. 1-1 ¶ IV.) These representations were false, as Graciano Lara had indeed committed a crime or offense for which he had not yet been arrested—the rape of his minor stepdaughter, which occurred prior to his N-400 and his naturalization interview. (Indictment, ECF No. 1-2; Plea Hr'g Tr., ECF No. 1-4 at 15:21–16:24.)

14

Graciano Lara admitted as such at his Plea Hearing in 2017 where he pled guilty to rape in the second degree in violation of MD. CODE ANN., CRIM. LAW § 3-304. (Plea Hr'g Tr., ECF No. 1-4 at 15:21–16:24.)

The second requirement—that the misrepresentation or concealment was willful—is also satisfied. "The element of willfulness is satisfied by a finding that an applicant for naturalization was aware of a fact and that he or she misrepresented that fact deliberately and voluntarily." *United States v. Okeke*, 671 F. Supp. 2d 744, 752 (D. Md. 2009); *United States v. Paz*, No. CV DLB-23-2801, 2024 WL 5186711, at *8 (D. Md. Dec. 20, 2024) (same). "An intent to deceive is not necessary; rather, knowledge of the falsity is sufficient." *Toribio-Chavez v. Holder*, 611 F.3d 57, 63 (1st Cir. 2010); *see United States v. Daifullah*, 11 F.4th 888, 897 (8th Cir. 2021) (same); *United States v. Charles*, 456 F. Supp. 3d 268, 283–84 (D. Mass. 2020) (same); *United States v. Okeke*, 671 F. Supp. 2d 744, 752 (D. Md. 2009) (same).

The undisputed record before the court is that Graciano Lara knew he had falsely answered that he had not committed a crime for which he was not arrested. Indeed, Graciano Lara knew that sexual intercourse with a 12-year-old minor constituted criminal activity, and could carry immigration consequences, as evidenced by his confirmation that he told the minor victim that "her family would be separated, he would go to jail, and they would ultimately be going back to El Salvador" if she disclosed the abuse. (Plea Hr'g Tr., ECF No. 1-4 at 16:14–18, 17:1–3.) Moreover, as the Government notes, "[p]ersons of ordinary intelligence are assumed to know that it is illegal to sexually abuse children." *United States v. Martinez*, No. 23-CV-247-GKF-JFJ, 2024 WL 5347840, at *4 (N.D. Okla. Nov. 18, 2024) (citation omitted); *see United States v. Barrera-Mackorty*, No. 23-50031, 2024 WL 3565267, at *1 (9th Cir. July 29, 2024), *cert. denied,* 145 S. Ct. 1442 (2025) (recognizing same).

Moreover, Graciano Lara advised he was "more or less" able to read and write in the English language. (Plea Hr'g Tr., ECF No. 1-4 at 5:16–22.)  He did not require an interpreter or additional assistance in preparing his N-400. (N-400, ECF No. 1-7 at pp. 18–20.)  His answers to other questions in the N-400 demonstrate sufficient understanding; for instance, he answered yes to related questions of whether he had ever been "arrested, cited, or detained by any law enforcement officer . . . for any reason," "charged with committing, attempting to commit, or assisting in committing a crime or offense," or "convicted of a crime of offense." *Id.* at p. 15.

The third requirement of materiality is similarly satisfied.  "[T]he test of whether [an individual's] concealments or misrepresentations were material is whether they had a natural tendency to influence the decisions of the Immigration and Naturalization Service." *Kungys v. United States*, 485 U.S. 759, 772 (1988).  "[F]or purposes of determining the natural tendency of a misrepresentation to affect a decision under § 1451(a), what is relevant is what would have ensued from official knowledge of the misrepresented fact" – here that Graciano Lara had sexually abused a minor – "not what would have ensued from official knowledge of inconsistency between a posited assertion of the truth and an earlier assertion of falsehood." *Id.* at 775.

As discussed above, Graciano Lara's "failure to reveal that he had committed the crime of sexual abuse of a child [is] material." *United States v. Agyemang*, No. 7:17-CV-55-D, 2018 WL 3245048, at *4 (E.D.N.C. July 3, 2018) (quoting *United States v. Ekpin*, 214 F. Supp. 2d 707, 717 (S.D. Tex. 2002)); *see United States v. Gayle*, 996 F. Supp. 2d 42, 55 (D. Conn. 2014) (concluding there was "no doubt" that defendant's misrepresentations and concealments of his sexual abuse of his minor niece "were material"); *United States v. Martinez*, No. 23-CV-247-GKF-JFJ, 2024 WL 5347840, at *5 (N.D. Okla. Nov. 18, 2024) (explaining "knowledge that [the defendant] had sexually abused minors under his custody and care would have heavily influenced USCIS officials'

analysis"). Edwards further attests that "Mr. Graciano-Lara could not have established that he was a person of good moral character because, during the statutory period, he committed unlawful acts that adversely reflected on his moral character." (Edwards Aff., ECF No. 1-1 ¶ VII.)

Finally, the requirement that Graciano Lara "procured citizenship as a result of the misrepresentation or concealment" is also satisfied here. *See Kungys*, 485 U.S. at 767, *supra*. As the Eastern District of Virginia recognized of this requirement:

> The *Kungys* court was divided on how the government must show that the citizen procured naturalization as a result of concealment or misrepresentation. Justice Scalia wrote that proof of material misrepresentation or concealment creates a rebuttable presumption that the defendant was ineligible for citizenship, which the defendant may refute by showing that she met the qualification by a preponderance of evidence. *Id.* at 777. Justice Brennan added that the presumption only arises when the government produces sufficient evidence to raise a "fair inference" of ineligibility. *Id.* at 783 (Brennan, J., concurring). Another interpretation was to apply a but-for causality test, in which the procurement requirement is met if knowledge of the concealed or misrepresented fact would have led to denial of citizenship. *Id.* at 788–89 (Stevens, J., concurring). The Fourth Circuit has not ruled on the procurement requirement in the context of a civil denaturalization proceeding, but has followed the fair inference standard in unpublished opinions in the parallel context of 18 U.S.C. § 1425, which covers criminal unlawful procurement of naturalization. *See, e.g., United States v. Agunbiade*, No. 98–4581, 1999 WL 26937, at *2 (4th Cir.1999).

*United States v. Rahim*, No. 1:13CV718 JCC/IDD, 2014 WL 4182638, at *6 (E.D. Va. Aug. 21, 2014); *see also, e.g., United States v. Ahmed*, 735 F. App'x 863, 870 (6th Cir. 2018) (holding that "Justice Brennan's concurring opinion controls on" the issue of procurement); *United States v. Salem*, 496 F. Supp. 3d 1167, 1180 (N.D. Ill. 2020) (applying the "more restrictive standard" set forth in Justice Brennan's concurrence); *United States v. Eguilos*, 383 F. Supp. 3d 1014, 1031 (E.D. Cal. 2019) (same). *Cf. United States v. Agunbiade*, 172 F.3d 864, No. 98-4581, 1999 WL

26937 (4th Cir. 1999) (unpublished table decision) (regarding 18 U.S.C. § 1425, but citing to Justice Brennan's discussion of a "fair inference of ineligibility" in "the immigration context").[10]

The court considers whether, based on the undisputed record evidence, the Government has met its burden to raise a "fair inference of ineligibility" based on the disqualifying fact. *See Kungys*, 485 U.S. at 783 (Brennan, J., concurring). Considering the nature of the allegations, the above discussed precedent, and Edwards' declaration that Graciano Lara could not have established he was a person of good moral character during the statutory period based on the crime of raping his minor stepdaughter, the court concludes the Government has met its burden to raise a "fair inference of ineligibility." *See id.* Graciano Lara has not challenged or refuted the Government's assertions; and drawing all reasonable inferences in Graciano Lara's favor, the court discerns no evidence in the record that favors him, or upon which a reasonable conclusion could be drawn in his favor.

With all requirements satisfied, the Government has met its burden to establish that Graciano Lara's naturalization was procured by concealment of a material fact or by willful misrepresentation. The court will therefore grant the Motion as to Count III.

**IV.   CONCLUSION**

For the reasons set forth herein, by separate order, the Motion will be granted.

September 15, 2025                                               /S/

                                                                 _____
                                                                 Julie R. Rubin
                                                                 United States District Judge

---

[10] The Supreme Court's decision in *Maslenjak v. United States* similarly addresses what it means to procure citizenship illegally in the context of 18 U.S.C. § 1425: "To get citizenship unlawfully, we understand, is to get it through an unlawful means—and that is just to say that an illegality played some role in its acquisition." 582 U.S. 335, 342 (2017).